Citation Nr: 1456935 
Decision Date: 12/31/14 Archive Date: 01/09/15

DOCKET NO. 11-07 523 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss.

2. Entitlement to service connection for an acquired psychiatric condition, claimed as PTSD, and to include military sexual trauma.


REPRESENTATION

Appellant represented by: Tennessee Department of Veterans' Affairs


ATTORNEY FOR THE BOARD

R. Connally, Associate Counsel




INTRODUCTION

The appellant in this case, had former service in the Reserves. She had basic active duty for training (ACDUTRA) in the Army Reserves from July 1991 to December 1991. She had subsequent service in the Army Reserves and Air Force Reserves.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from an October 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee. The Board previously considered this appeal in June 2014. These two issues were remanded for further record development and to clarify prior audio examination opinions. The development was completed, and the case returned to the Board for further appellate review.

The issue of service connection for an acquired psychiatric condition, claimed as PTSD, and to include military sexual trauma is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

Bilateral hearing loss was not manifest during service, or to a compensable degree within one year of separation from service, and is not otherwise related to service.


CONCLUSION OF LAW

The criteria for service connection for bilateral hearing loss have not been met. 38 U.S.C.A. §§ 101, 1101, 1110, 5107 (West 2014); 38 C.F.R. §§ 3.6, 3.102, 3.159, 3.303, 3.385 (2014).




REASONS AND BASES FOR FINDING AND CONCLUSION

The Board has thoroughly reviewed all the evidence in the appellant's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, all of the evidence submitted by the Veteran or on her behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claims. The appellant must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (the law requires only that the Board address its reasons for rejecting evidence favorable to the Veteran). 

The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value. When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

When there is an approximate balance in the evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b) (West 2014); 38 C.F.R. § 3.102 (2014). The Court has held that an appellant need only demonstrate that there is an "approximate balance of positive and negative evidence" in order to prevail. See Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). The Court has also stated, "[i]t is clear that to deny a claim on its merits, the evidence must preponderate against the claim." Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert.

Service Connection for Bilateral Hearing Loss

The appellant contends that in-service noise exposure resulted in a current bilateral hearing loss disability. The appellant's primary military occupational specialty was as a medical specialist - a specialty which her DD Form 214 indicates she participated in for her entire five months of active duty for training service. The Board also notes this form also shows that she received a sharpshooter qualification badge for the M-16 rifle. The Board finds the appellant's statements regarding noise exposure credible to the extent that they are consistent with the nature of her service as a medical specialist. 

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C.A. § 1110 (West 2014); 38 C.F.R. § 3.303(a) (2014). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Active military service includes active duty, any period of active duty for training (ACDUTRA, the performance of full- time reserve component duties) during which the individual concerned was disabled or died from a disease or injury incurred or aggravated in the line of duty, and any period of inactive duty for training (INACDUTRA, weekend training) which the individual concerned was disabled or died from an injury incurred or aggravated in line of duty or from an acute myocardial infarction, a cardiac arrest, or a cerebrovascular accident which occurred during such training. 38 U.S.C.A. § 1106; 38 C.F.R. § 3.6(a). 

Presumptive periods do not apply to ACDUTRA or INACDUTRA. See Biggins v. Derwinski, 1 Vet. App. 474, 477-78 (1991). Therefore, favorable application of 38 C.F.R. §§ 3.307, 3.309 (presumption of service incurrence), 3.306 (presumption of aggravation), and 38 U.S.C.A. §§ 1111, 1132 (presumption of soundness) is not available in this appeal.

As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004); see also Hickson v. West, 12 Vet. App. 247, 253 (1999), citing Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd, 78 F.3d 604 (Fed. Cir. 1996). 

VA considers normal hearing to be from 0 to 20 decibels. Hensley v. Brown, 5 Vet. App. 155, 157 (1993). Additionally, for the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385.

On the authorized service enlistment audiological evaluation in May 1991, pure tone thresholds, in decibels, were as follows:

 



HERTZ



500
1000
2000
3000
4000
RIGHT
0
0
0
5
5
LEFT
0
0
0
5
0

While the appellant does not have an exit examination for the period of service on appeal, the Board notes that there are other INACDUTRA service audiological examinations of record. 

On the authorized reserve service enlistment audiological evaluation in August 1993, pure tone thresholds, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
0
0
0
5
0
LEFT
5
0
0
5
0

On the authorized periodic audiological evaluation in July 1998, pure tone thresholds, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
5
0
10
0
0
LEFT
0
0
0
15
10

The Board notes that on each audiological evaluation, the examining physician found the Veteran to have normal hearing. The Appellant also affirmatively denied any hearing trouble in each instance. In cases where the Veteran was not involved in combat, "...the Board may use silence in the [service treatment records] as contradictory evidence only if the alleged injury, disease, or related symptoms would ordinarily have been recorded in the [service treatment records]." Kahana v. Shinseki, 24 Vet. App. 428, 440 (Lance, J., concurring; see also FED.R.EVID. 803(7) (the absence of an entry in a record may be evidence against the existence of a fact if such a fact would ordinarily be recorded). Based on this evidence of record, the Board finds that the Appellant's hearing was normal during ACDUTRA service, and that she did not incur a hearing loss injury while in the line of duty. See Biggins, 1 Vet. App. at 477-78.

On the private audiological evaluation in November 2009, pure tone thresholds, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
40
35
40
X
50
LEFT
55
50
45
X
65

Speech discrimination testing revealed a speech recognition ability of 100 percent in both the right ear and left ears. 

In June 2011, the Appellant was referred by the VA for a private audiological evaluation. Pure tone thresholds, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
= 25
= 25
25
30
30
LEFT
= 25
= 25
= 25
= 25
= 25

Speech audiometry revealed speech recognition ability of 84 percent in the right ear at 55 decibels, and of 84 in the left ear at 60 decibels. For VA rating purposes, a performance intensity function must be obtained when speech discrimination is 92 percent or less during an audiological evaluation. The Board notes that the Appellant's exact results for puretone thresholds in her left and right ear are not ascertainable when below 25 decibels due to the quality of the scanned copy for this particular portion of the audiological evaluation record. However, the private examiner commented that the Appellant's hearing was "within normal limits" for the right ear from 500 to 2000 Hz, and started sloping to mild sensorineural hearing loss at the 3000 Hz range. According to the examiner, the Appellant's left ear was "within normal limits" for the frequencies between 500 to 4000 Hz. 

The Appellant told the June 2011 examiner that her hearing loss began while on ACDUTRA service in 1991. She felt that her current hearing loss is a result of being "exposed to noise from gunfire during basic training and while working as a medic," and also stated she had "minimal access to hearing protection while in the service." The Appellant stated that she has "some trouble hearing normal conversational speech, especially high-pitched voices." To the extent that the Appellant believes that she experiences a reduction in hearing acuity, such endorsement is competent. See Layno v. Brown, 6 Vet. App. 465 (1994). Generally, lay evidence is competent with regard to a disease with "unique and readily identifiable features" that is "capable of lay observation." See Barr v. Nicholson, 21 Vet. App. 303, 308-09 (2007). 

However, the Board finds that the Appellant's opinion regarding the etiology of her hearing loss is not probative because a lay person is not competent to provide evidence as to more complex medical questions and, specifically, is not competent to provide an opinion as to etiology in such cases. See Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (concerning rheumatic fever). See 38 C.F.R. § 3.159(a)(2). 

The June 2011 examiner did not make a formal diagnosis regarding the Appellant's hearing acuity, but stated that "excessive noise exposure to gunfire, with limited hearing protection, is a likely cause of [...] hearing loss." The Board does not find this opinion probative because medical evidence that is speculative, general or inconclusive in nature cannot support a claim. See Obert v. Brown, 5 Vet. App. 30, 33 (1993); see also Beausoleil v. Brown, 8 Vet. App. 459, 463 (1996); Libertine v. Brown, 9 Vet. App. 521, 523 (1996).

On the authorized VA audiological evaluation in May 2013, pure tone thresholds, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000
Average
RIGHT
15
15
20
25
20
20
LEFT
15
15
25
25
25
22

In determining whether a ratable hearing loss disability exists, the Board recognizes that the average decibel calculation does not use the 500 Hz measurement. 

According to the VA examiner, speech audiometry testing could not be conducted. The examiner found that the use of the speech discrimination score was not appropriate for this Appellant "because of language difficulties, cognitive problems, inconsistent speech discrimination scores, etc. that make combined use of puretone average and speech discrimination scores inappropriate." The examiner diagnosed normal hearing for both ears based on these examination findings. When discussing the etiology of the Appellant's hearing loss, the examiner opined that the Appellant's hearing was not at least as likely as not related to service because her "hearing thresholds were within normal limits today." The examiner found that hearing loss did not exist prior to service based on her review of the Appellant's service medical records, which showed that her hearing was "[within normal limits]" while in service. 

The Appellant received another VA audiological evaluation in July 2014. The purpose of this examination resulted from the prior Board remand, which stated that an addendum opinion was needed in order to determine and comment on whether the private audiological examinations from 2009 and 2011 indicate a current hearing loss disability "as well as any discrepancy between any findings at that time and the May 2013 VA examination." After a review of the Appellant's records, the examiner found that the Appellant's service medical records showed "normal" hearing in 1991, 1993, and 1998, and "the normal results obtained in 2013 suggest that if a hearing loss disability was present in 2009 and 2011, it was temporary and has since resolved." 

The July 2014 VA examiner also commented on the Appellant's speech recognition findings, "The Appellant's word recognition scores were unreliable and not consistent with her hearing. She had a difficult time repeating words back in a timely manner and at times would become overwhelmed with the task." Additionally, the examiner stated that, "her speech was not clear at times which would have an effect on her ability to provide accurate answers. When words were repeated back, often the Appellant would rhyme or would suggest a word that was very different from the one presented. The Appellant had difficulty with this task at her last evaluation [in May 2013] as well." However, the examiner noted that at the November 2009 examination, "the Veteran had excellent word recognition scores (100 [percent] in both ears) suggesting that her word recognition ability was excellent in 2009 which was well after her separation from the military. The combined use of pure tone average and speech recognition scores is not appropriate for this veteran."

On the authorized audiological evaluation in July 2014, pure tone thresholds, in decibels, were as follows:





HERTZ



500
1000
2000
3000
4000
Average
RIGHT
20
10
15
20
30
19
LEFT
20
15
15
15
20
16

The VA examiner concluded, "The Veteran showed normal hearing today, during enlistment of the Reserves, and in 2013, therefore, the temporary hearing loss obtained in 2009 and 2011 is deemed less likely as not (less than 50/50 probability) caused by or a result of military noise exposure." Based on the foregoing, the Board finds this medical opinion probative because it contains clear conclusions with supporting data, and a reasoned medical explanation connecting the two. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 301 (2008). 

Without a current disability, evidence of an injury in service, and a nexus between the two, entitlement to service connection cannot be established. See Shedden v. Principi, 381 F.3d at 1163. Even assuming that some hearing loss disability was shown during the pendency of the appeal, it is not shown to be caused by the appellant's service in the Reserves. Accordingly, the preponderance of the evidence is against the claim, so the benefit of the doubt doctrine is not for application, and the claim must be denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2014). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim and of the relative duties of VA and the claimant for procuring that evidence. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b).

VCAA notice should be provided prior to an initial unfavorable decision on a claim by the agency of original jurisdiction (AOJ). Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). The RO provided a letter to the Appellant in May 2009, prior to the initial adjudication of the service connection claim on appeal. The letter notified the Appellant of what information and evidence must be submitted to substantiate the claim, including a description of what information and evidence must be provided by the Appellant and what information and evidence would be obtained by VA. The Appellant was also advised to inform VA of any additional information or evidence that VA should have, and to submit evidence in support of the claim to the RO. The content of the letter complied with the requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b). 

The notice requirements of the VCAA apply to all elements of a service connection claim, including: (1) veteran status; (2) existence of a disability; (3) a connection between the veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Further, this notice must include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Id. at 486. The Appellant was provided with such notice by the May 2009 letter, including the type of evidence necessary to establish a disability rating and effective dates.

Next, VA has a duty to assist a veteran in the development of the claim. To that end, VA must make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claim for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159; see Golz v. Shinseki, 590 F.3d 1317, 1320-21 (2010) (stating that the "duty to assist is not boundless in its scope" and "not all medical records . . . must be sought - only those that are relevant to the veteran's claim"). Here, service records have been obtained as have records of private and VA treatment. Based on the foregoing, the Board finds that VA has met its duty to assist with regard to records development.

The Appellant was afforded a VA examination with respect to her claim in June 2011, May 2013, and July 2014. During the examinations, the VA examiners conducted a physical examination of the Appellant with diagnostic testing, was provided the claims file for review, took down the Appellant's history, considered the lay evidence presented, laid a factual foundation for the conclusions reached, and reached conclusions and offered opinions based on history and examination that are consistent with the record. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion has been met regarding the matters of service connection for bilateral hearing loss. 38 C.F.R. § 3.159(c)(4); Sickels v. Shinseki, 643 F.3d 1362 (Fed. Cir. 2011) (holding that the Board is entitled to presume the competence of a VA examiner and the adequacy of their opinion).

All necessary development has been accomplished; therefore, appellate review may proceed without prejudice to the Appellant. See Bernard v. Brown, 4 Vet. App. 384 (1993). In addition to the evidence discussed above, the Appellant's statements in support of the claim are also of record. The Board has carefully considered such statements, and concludes that no available outstanding evidence has been identified. Additionally, the Board has reviewed the medical records for references to additional treatment reports not of record, but has found nothing to suggest that there is any outstanding evidence with respect to the Appellant's claim. For these reasons, the Board finds that the duties to notify and assist the Appellant in the development of this claim have been met, so that no further notice or assistance to the Appellant is required to fulfill VA's duty to assist. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001).

As noted in the Introduction, the Board previously remanded this claim in June 2014. The Board instructed the AOJ to readjudicate the claim on appeal with consideration of the additional evidence associated with the claims folder. Since that time, VA issued a supplemental statement of the case that considered the additional, new evidence. As a result, the Board finds substantial compliance with its previous remand instructions, and has properly continued with the foregoing decision. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (noting the Board's duty to "insure [the RO's] compliance" with the terms of its remand orders).


ORDER

Service connection for bilateral hearing loss is denied.


REMAND

While the Board sincerely regrets additional delay, a review of the record reveals that further action concerning the claim that remains on appeal is warranted. 

In April 2014, the Appellant submitted statements that she was a victim of military sexual trauma while on active duty for training in December 1991. The Board has also reviewed the previously outstanding VA treatment records from the VA Women's Clinic in Nashville, Tennessee, and finds that they may support the Appellant's claim for service connection for an acquired psychiatric disability, claimed as PTSD, and to include military sexual trauma (MST). In light of the Appellant's recent contention that she has PTSD as the result of military sexual trauma, however, the Board finds that a VA examination and nexus opinion is warranted. See Menegassi v. Shinseki, 638 F.3d 1379 (Fed. Cir. 2011) (providing that under 38 C.F.R. § 3.304(f)(5) , a post-service medical opinion may be used in determining whether the occurrence of a PTSD stressor is corroborated for in-service personal assaults, and the Board may weigh the medical opinion against other evidence of record). The examiner should also provide an opinion on whether any of the non-PTSD diagnosed disorders are related to the appellant's military service.

Further, as the Appellant is asserting PTSD due to military sexual trauma, the provisions of 38 C.F.R. § 3.304(f)(3) regarding claims based on personal assault and the method of developing such claims are applicable. Based on review of the record, although the Appellant was sent VCAA notice in May 2009, it does not appear that she has been sent notice of the amended provisions of 38 C.F.R. § 3.304(f)(3). This regulation is specifically germane to the development and adjudication of this claim as it involves the standard of proof and the type of evidence necessary to substantiate a claim of service connection for PTSD based on personal assault. VA is required to give the appellant notification that evidence from sources other than the appellant's service records or evidence of behavior changes may be considered credible supporting evidence of an in-service stressor. See 38 C.F.R. § 3.304(f)(3). Thus, the RO should provide notice of the types of evidence which may be considered in a personal assault claim under 38 C.F.R. § 3.304(f)(3).

Additionally, the Appellant has indicated that she has received continuing treatment at the VA. VA mental health treatment records from July 2009 to May 2014 have been associated with the claims file. As VA medical records are constructively of record and must be obtained, the RO should obtain any VA treatment records from May 2014 to the present. See 38 C.F.R. § 3.159; Bell v. Derwinski, 2 Vet. App. 611 (1992).

Accordingly, this matter is REMANDED for the following action:

1. The RO should furnish the Appellant with notice of the types of evidence which may be considered in a personal assault claim under 38 C.F.R. § 3.304(f)(3). 

2. The AOJ should obtain VA mental health treatment records from May 2014 to the present. Contact the NPRC or any other appropriate custodian and specifically request mental health records pertaining to any treatment the Appellant underwent. If such records are nonexistent or unavailable, the record should be annotated to reflect this.

3. The Appellant should be afforded a VA psychiatric examination to determine the nature and etiology of her claimed psychiatric disorder, to include PTSD. The claims file must be made available to the examiner for review. 

Following an examination of the Appellant and a review of the Appellant's service treatment records, personnel records, lay statements, and post-service treatment records, the examiner should offer an opinion as to the following:

(a) Whether it is at least as likely as not (a 50% or higher degree of probability) that any current acquired psychiatric disabilities are causally related to service; 

(b) whether it is at least as likely as not (i.e., 50 percent or greater probability) that the Appellant displayed any behavioral changes in service that would be consistent with her claim of military sexual trauma [being forced to have sex with another enlisted soldier under the threat of knife point while staying the night alone at a hotel room off-base in December 1991]. The examiner should offer an opinion in accordance with the guidance set forth in 38 C.F.R. § 3.304(f)(3). 

If the examiner concludes that incidents of personal and sexual assault did take place in service, then the examiner should offer an opinion as to whether any currently diagnosed PTSD is causally related to such incidents. 

A complete rationale for all opinions must be provided. If the examiner cannot provide an opinion without resorting to mere speculation, he or she shall provide a complete explanation stating why this is so. In so doing, the examiner shall explain whether the inability to provide a more definitive opinion is the result of a need for additional information or that he or she has exhausted the limits of current medical knowledge in providing an answer to that particular question(s).

To the extent possible, the examiner should distinguish between symptoms associated with PTSD due to service, and any symptoms associated with a nonservice-connected disorder. If the examiner is unable to distinguish the symptomatology, the examiner should so state in the report.

4. Thereafter, the AOJ must review the claims file to ensure that the foregoing requested development has been completed. In particular, review the requested medical opinion to ensure that it is responsive to and in compliance with the directives of this remand and if not, implement corrective procedures. See Stegall v. West, 11 Vet. App. 268 (1998).

5. Following the completion of the foregoing, the AOJ should readjudicate the Appellant's claim. The AOJ should then provide the Appellant and her representative with a supplemental statement of the case, to specifically include consideration of all evidence added to the record since the October 2014 supplemental statement of the case, and allow an appropriate period of time for response. Thereafter, the claims folder should be returned to the Board for further appellate review, if otherwise in order.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112.



______________________________________________
M. TENNER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs